Robert CLARK, by his next friend,
Evelyn CLARK, Appellee,

v.

IOWA DEPARTMENT OF HUMAN
SERVICES, Appellant.

No. 95–1923.

Supreme Court of Iowa.

Nov. 20, 1996.

Thomas J. Miller, Attorney General, and Daniel W. Hart, Assistant Attorney General, for appellant.

Gail R. Klearman, Dubuque, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

This is a proceeding under the Iowa Administrative Procedure Act, Iowa Code section 17A.19 (1993), for judicial review of final action by the Iowa Department of Human Services (DHS). At issue is petitioner's eligibility for benefits under the Medicaid program from February through August 1993. We conclude he was not eligible to receive Medicaid benefits until ownership of his pension was transferred to his wife, which occurred when the Qualified Domestic Relations Order (QDRO) was filed in September 1993. We reverse and remand.

I. *Background Facts and Proceedings.*

This case has a long history, including a previous appeal to our court. *See Clark v. Iowa Dep't of Human Servs.*, 513 N.W.2d 710 (Iowa 1994) [hereinafter *Clark I*]. Robert Clark is eighty-two years old and has been married to Evelyn Clark, who is seventy-nine years old, since 1935. Robert moved into a nursing home in 1991, while Evelyn remained at home. We stated in *Clark I*:

> In 1992, Evelyn filed a petition for separate maintenance and an application for temporary support. She asked that the marriage of the parties be preserved but that Robert be required to pay monthly support to Evelyn. The acknowledged purpose of the separate maintenance action was to reduce Robert's monthly income below the limit for Medicaid benefits. The district court ordered Robert to pay Evelyn $1135 per month.
>
> Evelyn then applied to the DHS for Medicaid benefits on behalf of Robert. The application was denied on the ground that Robert's income was too high and could not be reduced, for Medicaid purposes, by the spousal support order. An administrative law judge and the director of the DHS

affirmed. On judicial review, the district court reversed, ruling that Evelyn's separate maintenance order reduced Robert's income sufficiently to qualify him for benefits.

*Id.* at 710.

We reversed the district court in *Clark I* and remanded for reinstatement of the DHS's decision denying Robert's application for Medicaid benefits. *Id.* at 711. We held that, under Iowa property law, income for Medicaid purposes is to be determined as of its receipt, not after it is reduced by payments under a spousal support order. *Id.* This rule is sometimes referred to as the "name on the check" rule, in which income is attributed to the person in whose name it is received. *Id.*

While *Clark I* was pending, Evelyn sought and received a Judgment and Decree for Separate Maintenance on January 19, 1993. Again, the purpose of this action was to reduce Robert's income. The district court ordered that Robert provide, as additional support, his entire pension from Operating Engineer's Union, which totaled $198.20 per month. The court found "a [QDRO] should be entered for the respondent to pay to the petitioner all of the [union pension]" and ordered Evelyn's attorney to furnish a QDRO as soon as possible. As soon as ownership of his union pension was transferred to Evelyn, Robert would become eligible for Medicaid benefits. The QDRO was not signed and filed until September 8, 1993.

The DHS continued to count Robert's union pension as his income until the QDRO was filed in September. As a result, he was ineligible for Medicaid benefits until September because his monthly income from social security and his pension exceeded the federal Medicaid cap.

Evelyn filed a new administrative appeal, arguing that the union pension should not be counted as Robert's income after January 1993, the date of the Judgment and Decree. An administrative hearing was held before an administrative law judge, who issued a proposed decision upholding the DHS's action. After Evelyn appealed this decision, the Di-

rector of the DHS issued a final order adopting the administrative law judge's decision. Evelyn sought judicial review in district court, which reversed the DHS's final decision. *See* Iowa Code § 17A.19. The DHS then filed a timely notice of appeal. *See id.* § 17A.20.

## II. *Scope of Review.*

■ When the district court exercises its powers of judicial review, it functions in an appellate capacity to correct errors of law. *Wiebenga v. Iowa Dep't of Transp.*, 530 N.W.2d 732, 734 (Iowa 1995). An appeal of a district court decision is governed by Iowa Code section 17A.20. *Glowacki v. Board of Med. Exam'rs*, 516 N.W.2d 881, 884 (Iowa 1994). Under this section, we review a district court's decision rendered in an appellate capacity to decide whether the district court correctly applied the law. *Wiebenga*, 530 N.W.2d at 734. To make that determination, we apply the standards of Iowa Code section 17A.19(8) to the agency action to determine if our conclusions are the same as the district court's. *Houlihan v. Employment Appeal Bd.*, 545 N.W.2d 863, 865 (Iowa 1996). Iowa Code section 17A.19(8) provides that an agency decision may be reversed if substantial rights of an individual have been prejudiced and the action is unsupported by substantial evidence or affected by errors of law. *Id.; see* Iowa Code §§ 17A.19(8)(e), (f).

## III. *Eligibility for Medicaid Benefits.*

The sole issue before us is whether the January 1993 Judgment and Decree for Separate Maintenance reduced Robert Clark's income for Medicaid eligibility purposes. The DHS argues that the January 1993 Judgment and Decree was insufficient to change the name on Robert's pension check, and that, until the filing of the QDRO, Robert continued to receive his pension benefits in his own name and continued to be subject to a support order. The Clarks, on the other hand, claim that the Judgment and Decree immediately transferred ownership of Robert's pension to Evelyn because it was a division of marital property. The district court agreed with the Clarks, adding that the QDRO was merely an additional ministerial act. We disagree.

■ As we stated in *Clark I*, for purposes of Medicaid eligibility, income must be determined prior to any reduction for family support. *Clark I*, 513 N.W.2d at 711. The test is not what income is actually available to the recipient but what the recipient initially received. *Id.* Until September 1993, when the QDRO was filed, the union pension was still in Robert's name and checks were issued to him. Therefore, the "name on the check" rule requires that the income be attributed to Robert.

■ Evelyn is essentially claiming that she was the full owner of Robert's union pension from February to August 1993, even though it was still in his name. This argument is without merit. In *Torner v. State*, 399 N.W.2d 381 (Iowa 1987), we held that a wife could not be considered to be half owner of the income received by her husband. *Torner*, 399 N.W.2d at 386–87. The Judgment and Decree merely ordered Robert to pay his pension benefit to Evelyn *as additional support*. It was not a division of marital property. A support order such as this is not enough to change the ownership of income for Medicaid eligibility purposes. *Clark I*, 513 N.W.2d at 711.

■ However, even if the Judgment and Decree intended to transfer ownership of Robert's pension, it was preempted by the Employee Retirement Income Security Act (ERISA). *See* 29 U.S.C. ch. 18 (1994). The Iowa Court of Appeals has summarized the ERISA provisions that are relevant to this case:

The [ERISA] was enacted by Congress to provide protection for participants and beneficiaries of employee pension plans in the private work place. One of the key components of the act was the spend-thrift provision, which prevents plan participants from assigning or alienating their plan benefits. In response to efforts by dependents and former spouses to obtain benefits from plans to satisfy family support obligations, Congress created an exception to the spend-thrift provision by enacting the Retirement Equity Act of 1984 [codi-

fied as amended at 29 U.S.C. § 1056(d) ]. This Act amended ERISA to allow participants of a pension plan to alienate or assign benefits if done pursuant to a QDRO. *ERISA otherwise preempts efforts to alienate or assign benefits by domestic relations orders that do not qualify as a QDRO.* *In re Marriage of Bruns,* 535 N.W.2d 157, 161–62 (Iowa App.1995) (citations omitted) (emphasis added). In other words, domestic relations orders, which are not QDROs, are expressly made subject to the anti-assignment provisions and are, as a result, preempted. *In re Marriage of Rife,* 529 N.W.2d 280, 281 (Iowa 1995); *see also* 29 U.S.C. § 1056(d)(3)(A). A QDRO is any judgment, decree, or order made pursuant to a state domestic relations law which:

> ■ creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and ... [2] relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant....

29 U.S.C. § 1056(d)(3)(B). Therefore, a QDRO is more than a ministerial act; it is a necessary requirement before ownership of pension benefits can be transferred. The January 1993 Judgment and Decree was not a "qualified domestic relations order." Therefore, it was not exempt from ERISA's spendthrift provision, and it could not transfer ownership of Robert's pension benefits.

We conclude that, until the QDRO was filed on September 8, 1993, Robert Clark retained ownership of the union pension. Further, because this pension kept Robert's income above the federal Medicaid cap, he was not eligible to receive Medicaid benefits until the QDRO was filed. We reverse the district court's decision and remand for reinstatement of the final order of the DHS.

**REVERSED AND REMANDED.**